The next case for oral argument this morning is Appeal No. 25-1018, Brogsdale v. Torres-Corona. Good morning, Mr. Lubin. Good morning, Your Honors. May it please the Court. Just one second, please. Sorry. Sorry. Good morning. Okay. Champing at the bit. You go right ahead. After three coffees. My apologies. May it please the Court and Counsel. Imagine a scenario in which one man walks up to another in the street, and he says to the man, I'm going to hurt you. I'm going to physically hurt you. And then he pulls his hand. He says, I don't know you. I just feel like hurting you. He pulls his hand back. He goes to punch. And the other man defends. Where does the complaint say that? The complaint says, not that, but something relatively simple. Isn't that a problem, though? Because the complaint doesn't say anything at all about immediate harm or the necessity for use of force. It discusses the actions. All that we have is what happened. And it discusses the actions that Mr. Reynolds was taking. But is that what happened? I mean, what you just described, is that what happened? That he pulled his arm back, and he was ready to hit him, and then your client punched the… He was rushing the… Mr. Reynolds? Yes. In fact, the line is, he was screaming. I've seen the video of this. The video's rather stark. But we never got there in the case. Reynolds was standing up a flight of stairs, looking down. The police are standing there. They're trying to calm him down. He's not listening to anything they're saying. And Reynolds is saying, I got you. You're going to see about me. You're going to feel me. I got your ass. He says these things, not to the officers. He says it to my client, to Mr. Brogsdale. They're telling him to calm down. He's not paying any attention to them. He rushes past one of the officers. The second officer is next to my client. Neither of the officers do anything. My client is standing on the threshold of his home. And he puts his hands on Mr. Reynolds in order to prevent him from getting into the home. And all of that is almost objectively textbook, a case of self-defense. And the purpose of the hypothetical, which is different from this case, but it's to isolate what the legal argument really is. Because what the district court found is that in that hypothetical, where it's very, very clearly, according to everybody, a case of self-defense. If a police officer shows up on the scene after the first punch is thrown, or if the police officer watches the entire incident, including the threats, according to the district court, the police officers have seen the exact same scene, at least as far as the law is concerned. Because the district court's ruling was that whenever the reason for innocence is an affirmative defense, in this case self-defense, that ends the inquiry. An affirmative defense could not possibly be the underlying factor in a 1983 suit. And that's not the law. That's not what this court has said the law is. Mr. Lubin, can I ask you, and I want to ask the defense as well, this. I've been trying to think about this case. Suppose it had spun out a little bit differently. And we have the factual allegations in the complaint about what Reynolds did, about his threats, and his refusal to comply with the verbal commands to stop. At that point, would the officers have been justified in using force against him? Absolutely. I tend to agree with that. And if they don't, it's a little hard for me to understand why Mr. Brogsdale can't take action to defend himself. I agree with exactly that. If Mr. Brogsdale was a police officer, happens to be he is a police officer, but it doesn't really matter. If he's a police officer standing in that circumstance, I don't think there's any question the police officers would have had a right and a duty to step, not a legal duty, but at least a moral duty to step in and stop a violent act from taking place. Certainly a right to do so. Certainly a right to do so. And probably more relevant in this room, they have a right to do so. They wouldn't have been arrested for preventing this violent attack. And so for the very same reason, my client, if he was a civilian, really should have the same exact right. And the important thing in this case, one of the important things in this case, is that the police officers who arrested Mr. Brogsdale witnessed the entire thing. In other words, they not only witnessed my client place his hands on Mr. Reynolds, they also witnessed the lead up to that, which gave way to the defense of self-defense. This court, in several cases, has ruled that when the officers witness the self-defense, or not the self-defense, when they witness the affirmative defense, that must be part of the probable cause analysis that the officers engage in in real time. Right, but it must be conclusively established that the affirmative defense applies. I mean, beyond a doubt that self-defense applies. It's different than when you're arguing self-defense in a criminal court and you're the defendant, than when you're the plaintiff suing the police officer saying that it was beyond dispute that the defense of self-defense applied. I don't think I've seen language, and I don't know that it changes the outcome here, but I don't think I've seen language that says it must be conclusively established, it must be proven, you know. You haven't. Isn't that the standard? The standard is when making a probable cause determination, simply alleging the affirmative defense doesn't undermine probable cause because the arresting officer has no duty to investigate the validity of any defense. But, and that's from Hodgkins, but when the officers see the actions which give rise to the self-defense, they can't ignore it. They're not permitted to bury their heads in the sand. At trial, probably the language of the instructions would need to be something close to conclusively established, right? It should have been obvious to the officers at the time. It should have been obvious to the officers. I don't know if I'm conceding anything by conceding that. But certainly at the pleading stage, I don't know that I need to plead the facts that demonstrate it was conclusive. Obviously, there's not any possible other conclusion. But perhaps when writing up the jury instructions, there could be some language that shows a heightened burden. Really, I don't know because I don't know. Look, I think we all recognize officers often step into the middle of situations where it can be very hard to tell where responsibility lies. And I understand your case here to be unusual because you're saying the officers saw the whole relevant sequence. Correct. But those jury instructions will need to account, in essence, for the broader kinds of problems that officers face. Of course. Of course. That's what makes this case interesting. A lot of the decisions, in fact, every single decision, I believe, that was cited by the district court in justifying this order was a circumstance where what the officers knew at the time that they made the arrest was that the crime had been committed. And they were not aware of the facts that led to the affirmative defense. Had they been aware of those facts, the analysis may have been different. And the only one which doesn't fit into that pattern is Bayless v. City of Chicago, which, as I've written in my brief, I don't think was correctly decided. There seems to be some tension with our cases that it's clear officers, once they have probable cause, they don't have to do anything else to investigate a potential affirmative defense. To investigate. Correct. So there seems to be some tension with that in your argument that you could conclusively establish at the pleading stage that there was self-defense going on and they should have known that. I don't know that it's a tension. There's two cases. If the officers come onto a scene and they don't know anything other than that a crime has occurred and they're not aware of the affirmative defense, then that's it. There's probable cause. They're not going to be liable. But if they know everything that happened, if they witnessed the entire scene, the fact that the reason the defendant isn't guilty is because of an affirmative defense, that has to play into their analysis. They're not able to bury their heads in the sand. I think that language is used in at least one of the decisions. I believe it's Humphrey off the top of my head. I see that I'm at two minutes. I think I wanted to take three, so at least I'll take two. Okay. Thank you. Thank you, Your Honors. Ms. Barnea? May it please the Court. Brogsdale's false arrest claim was correctly dismissed. The allegations in the complaint established that the officers had probable cause to arrest Brogsdale for battery, and Brogsdale's assertions about self-defense don't negate that probable cause. According to the complaint, the officers observed Brogsdale commit a battery against Reynolds. The complaint alleged that in the officer's presence, Brogsdale placed his hands on Reynolds, and Brogsdale described that act as a use of force. That was contact of an insulting and provoking nature, and Brogsdale does not claim otherwise. So all of the elements of a battery were met. Brogsdale's claim that he was acting in self-defense doesn't negate that probable cause. To negate probable cause that Brogsdale was acting in self-defense had to be obvious to a reasonable person in the officer's position. To put it another way, that Brogsdale was acting in self-defense must have been staring the officers in the face, and I think— Why wasn't it? Pardon me? Why wasn't it, based on the allegations in the complaint here? Sure. So it— Would you agree with your friend on the other side that the officers, based on the facts alleged in the complaint, would have been justified in using force to prevent Mr. Reynolds from attacking Mr. Brogsdale? No, I don't agree. The officers, based on what the allegations that are in the complaint, the officers would not have been justified in using force. What we have— He was threatening. He was disregarding verbal commands, right? I'm trying to remember what I know about the continuum of the use of force, but we've gone beyond presence. We've gone to verbal commands. Don't we next go to so-called soft hands? Well, so what we have in the—that the officers actually saw in the complaint, and again, this is—it has to be obvious to the officer. There can be absolutely no other conclusion that can be drawn, is we have these vague allegations about Reynolds being drunk, yelling, and— What's vague about that? That these are—they don't show that Brogsdale was obviously in imminent physical peril. They don't—it's now— He was being threatened by a man who seemed to be trying to invade his apartment, who was disregarding verbal commands from police officers to stop. Does he—do they have to wait until a punch is thrown? There needs to be more. Based on this—  For example, a punch was about to be thrown, a weapon, something else other than this vague collection of things that keep changing as more filings get produced. So today we hear that now he's on the threshold. That's new. So it is not enough— This is all on the pleadings, right? Correct. And the plaintiff is entitled to elaborate on pleadings, on factual allegations that are consistent with what's alleged in the complaint. Correct. So I'm trying to understand what was fatally missing from this. They only knew what they could absolutely observe. Charging could mean many things. The threats—this is a drunk person. The officers were there. They were able to see exactly what— So shouldn't we just hear testimony from the people who were there about those kinds of details? That's not necessary because this collection of allegations does not make it completely obvious that imminent— that Bravstow was obviously in imminent physical danger. This is just based on what the—it has to be plain as day. And the only thing that was plain as day from the officer's perspective was that Bravstow had committed a battery. This is—self-defense is a six-part test. It hinges on the beliefs of two people. And no case requires officers to ferret out in the middle of a dispute what everyone is thinking. They are allowed to act on what they can actually observe and leave competing inferences about mental states and whether defenses apply to the rest of the law enforcement process. They don't have to dissect an altercation and look for evidence. They're allowed, based on what they saw, to arrest both Brogsdale and Reynolds and let other aspects of the law enforcement process sort out the evidence. What was Reynolds arrested for? Criminal damage to property. Can you give me your best legal authority for the pleading requirement that this report applied here? Sure. So I would say that Hodgkin's is the best. Hodgkin's? Hodgkin's, because it sets—I know it's not a motion to dismiss, but it clearly sets out what it means to be obvious. And it means that the officer needs firsthand knowledge that the behavior fits the defense. No other— Okay. Yeah, so it needs to be plausible. Plaintiff likes that case. I'm sorry? Plaintiff likes that case. Sure. We like it, too. I mean, because it explains exactly how obvious it needs to be. And with respect, I believe the plaintiff is misinterpreting what the import of Hodgkin's is, because I think Hodgkin's really lays out exactly how clear it needs to be to the officer that there's an affirmative defense. That if the officer in that case—the example was there was a curfew law and there was an exemption for minors who were coming home from protective activity, right? So if there's a teen that was stopped by an officer after whatever the curfew time was and the teen said, hey, I was coming home from a rally, the officer does not have to take the teen at her word. Right. Yeah. But if the officer sees the teen leaving the rally, the officer has to take that into account, right? Correct. So why doesn't this all just turn on factual questions under the umbrella of these allegations in the complaint? Because it's not plausible that it was obvious to the officers that— What's not—okay. I'm having trouble understanding what's not plausible about that, because it seems to me pretty obviously if the officers had used force to stop Reynolds, the city would be in here having no trouble defending that use of force. Then— But here it was an off-duty officer who was using the force. The reasonable inference is that the off-duty officer was taking matters into his own hands when he should not have. There were two officers there— Who were doing nothing, according to his complaint, other than issuing verbal orders that were being disregarded, right? Those are the allegations in the complaint. What Reynolds was presenting, based on the complaint, did not put Brogsdale in imminent physical danger, that he was about to get physically harmed, and there would have been no way for the officers to know what Brogsdale was thinking. And based on what they saw— If the complaint included details like Reynolds was approaching at, let's say, three feet per second with a fist raised and was 18 inches from Mr. Brogsdale, would that be sufficient? Is that what we should expect from a complaint in this case? I mean, that would be better. I'm not— You don't think that would be enough? It would depend on— You're not willing to concede that? It would depend on what the other allegations are. Everything else is the same? Everything else. And he's coming at three feet—you said three feet per second? Yep. That, at least, and he had a fist raised— Make it 10 feet per second. That would be—yes, that could be enough, but that is not what we have here. What we have here is a drunk guy who is yelling and advancing from an unspecified distance, and the officers clearly saw— Past the officers, right? Past the officers who were between the two of them? Past one of the officers. Oh, okay. Yeah, so there are two officers. At one point, they were separating the both of them. This sounds a lot to me like a pretty good jury argument. Our position is that this was correctly dismissed because it is not plausible that it was obvious to the officers. Okay. I understand your position. If there are no further questions from the panel, we believe that the district court judgment was correct, and we ask that the judgment be affirmed. Thank you. Mr. Lubin. Thank you. The criminal damage to property, by the way, was the fact that Mr. Brogsdale's door had been beaten so badly— What does that have to do with imminent harm? Well, it has to do with what the officers know. It's one of the many things— But it doesn't have anything to do with whether Mr. Brogsdale was in imminent harm. The imminent harm— It has to do with property damage. Correct. The imminent harm is the fact that Mr. Reynolds is advancing at him and is threatening him while he's advancing at him, and is ignoring the police officer's command while threatening and advancing at Mr. Brogsdale. Was he advancing from 100 yards? Well, I'll tell you he was advancing from up a small flight of stairs. I don't know that— Would it have made a difference if he was 100 yards away and advancing? If he got to within reaching distance of Mr. Brogsdale, he's no longer at 100 yards. What if Mr. Brogsdale shot him from 100 yards? Certainly that would be different. Yeah, that would be different. That would be a very different story. Where does your complaint say that it was imminent? Which paragraph should I look at? Where he says that he was running at him and he passed one of the police officers. It doesn't say running. It doesn't say that. He was approaching at him while threatening, and he passed a number of police officers. He passed one officer who told him to stop advancing. He said, nah, nah, nah, I do not want. I do—nah, nah, nah. Correct. And then it says Brogsdale prevented Reynolds from harming himself or anyone else by placing his hands on him. Correct. Where's the imminence? The imminence is that he was close enough to do that. If he wasn't close enough to do that, then he wouldn't have been able to do that. At this point, Reynolds has passed one police officer. The other police officer is doing nothing to stop him. And I think the question, would a police officer have been allowed to put his hands on Mr. Reynolds? Certainly so. There shouldn't be really any difference. Well, maybe not. Maybe Reynolds would have sued. Maybe Reynolds would have brought a 1983 claim against a police officer, right? You see the predicament they're in? I wouldn't have— And then maybe they get their trial, and they get to tell the jury what they think. Could be, and that's part of it. Could be, right? It's a jury question. It's a fact question. It's always a jury question. No, but in this case, it is. The case on the pleadings standards, by the way, is Swanson v. Citibank, which says that the required level of factual specificity rises with the complexity of the claim. This is not a complex claim. It doesn't require discussing feet and feet per second and all of that. The last thing, I realize my time is out. The term in Hodgkin's, by the way, is the knowledge of the facts and circumstances which would conclusively establish the affirmative defense. That's the language to answer Your Honor's question. Thank you, Mr. Lubin. Thanks to both counsel. Thank you very much. I will take the case under advisement.